FRED STEVENS, Respondent, v. MRS. FRANK BARNES and Mrs. Ed. Wrede, Doing Business Under the Firm Name and Style of Barnes & Wrede, Appellants.

(175 N. W. 709.)

**Negotiable instruments — promissory note — no execution nor delivery when procured by fraud.**

1. Where a promissory note is procured by fraud and misrepresentation, there is no legal execution nor delivery of it, and it is of no legal force or effect.

**Negotiable instruments — fraud in securing signature — detaching note from other instrument a material alteration.**

2. Where one, through himself or agent, falsely and fraudulently procures another to sign a paper, purporting to be an order for goods, to which is attached a promissory note, the two instruments being separated only by a perforation, and the note is, after the delivery of the order, detached from it, such detachment constitutes a material alteration of the note, and destroys its legality if any it had.

This is true, even if in the order there are words authorizing said note to be detached; for they only show more clearly the fraudulent purpose of the combination of the two instruments.

**Negotiable instruments — when fraud shown burden of proof shifts.**

3. Fraud, at the inception of the alleged contract and note, having been estab-

tablished, the burden shifted to the indorsee to prove by fair preponderance of the evidence, that he was a good-faith purchaser, for value, before maturity, without notice. This he has failed to do.

Opinion filed November 8, 1919.

Appeal from the judgment of the District Court of Ransom County, *Frank P. Allen,* J.

Judgment reversed.

*Bangert & Nollman,* for appellants.

"A written instrument, has no valid existence until delivered in accordance with the intention of the parties." Guild v. More, 32 N. D. 432.

Nothing will excuse culpable misrepresentations, if you find any were made, short of proof that they were not relied on, either because the other party knew the truth, or because he relied wholly on his own investigation. Stevens v. Venema (Mich.) 168 N. W. 531; Stevens v. Pearson (Minn.) 163 N. W. 769; Pom. Eq. Jur. § 891.

There is no proof that plaintiff was a holder in due course or establishing his good faith. Sweet v. Anderson (N. D.) 170 N. W. 869; Pratt v. Duncan, 171 N. W. 337; Guild v. More, 32 N. D. 432.

*Kvello & Adams,* for respondent.

Where a holder takes from a bona fide holder he occupies the same position as his transferrer, notwithstanding he may have actual notice of defenses, was a purchaser after maturity or not a purchaser for value. 8 C. J. 466, § 685; Comp. Laws 1913, § 6943.

Fraud not having been established, it is presumed as a matter of law, that appellants, having signed the contract and note, had previously read them and knew the contents thereof; and, having affixed their signatures, they will not be heard to deny knowledge of the contents of the contract. Standard Mfg. Co. v. Slot (Wis.) 98 N. W. 926; David Bradley Co. v. Banta (Neb.) 98 N. W. 697; Fulton v. Sword Medicine Co. (Ala.) 40 So. 393; Slaughters v. Gerson, 13 Wall. 379; Andrews v. St. Louis Smelting Co. 130 U. S. 463; Kimmell v. Skelly, 62 Pac. 1067.

A negotiable instrument is not avoided where the maker has made, authorized, or consented to the alteration. Comp. Laws, 1913, § 7009.

When the maker expressly consents to the detachment of a contract from a note he is absolutely liable on the note both to the payee and a bona fide holder. Price v. Cochran, 1 Bibb (Ky.) 570; Weinstein v. Citizens Bank, 69 So. 972; Pratt v. Rounds, 169 S. W. 848.

The better holding is that a promise or order to pay a definite sum, plus or minus a definite sum of discount, is negotiable. 8 C. J. 146, note 93; Loring v. Anderson (Minn.) 103 N. W. 723; Farmers Loan & T. Co. v. Planok (Neb.) 152 N. W. 390, L.R.A.1915E, 564.

GRACE, J. This action is one which was brought in the county court of Ransom county on a purported promissory note. By stipulation between the parties, the action was tried in the district court of that county. It was tried to a jury, but, at the close of the testimony, counsel for each of the parties made a motion for a directed verdict. Thus, under the former decisions of this court, the case became a court case.

The complaint states a cause of action upon the promissory note. Before stating the contents of the answer, it may be well to state the substantial facts of the case.

On September 18, 1914, one Edwin Acker, a salesman for Donald-Richards Company, secured an order from the defendant for a certain bill of goods which was signed by Mrs. Frank Barnes. To the order for the goods was attached the promissory note. The order and the note were one piece of paper, the note being separated from the order by perforation.

At the time of the trial, Mrs. Frank Barnes, was not present, it being claimed that she was out of the state. The following stipulation was agreed to, by and between the counsel for the respective parties:

"It is stipulated and agreed, by and between counsel, that prior to the execution of the instrument in suit in controversy, the Donald-Richards Company, through one of its agents, had sold J. I. Rue, a merchant in Enderlin, North Dakota, goods, wares, and merchandise of the same nature and composition as the articles sold to the defendants for which the instrument in controversy was given in part payment. It is further stipulated and agreed that the witness, Mrs. E. W. Wrede, will testify that at the time of the taking of the order attached to the deposition taken on the part of the plaintiff, and marked exhibit 'C,' and herewith offered in evidence, together with the instrument sued upon in this ac-

tion, the said Acker, agent of said Donald-Richards Company, stated to this witness and her partner, Mrs. Frank Barnes, that the said instrument taken together constituted an order for goods, and did not constitute a note, but that the second portion of said instrument, now marked exhibit 'A,' which was attached to exhibit 'B' was to represent merely the manner in which the goods, or payment for the goods should mature; it is further stipulated that said instrument, exhibit 'A,' was signed by Mrs. Frank Barnes for the firm of Barnes & Wrede after said representations had been made in the presence and hearing of both the witness and signer of exhibit 'A,' to each of said parties said agent addressing the witness and Mrs. Barnes jointly."

The contract and note were sent to Donald-Richards Company, and the testimony by deposition shows that the note was detached from the contract, and afterward delivered to the Iowa State Bank as part of the collateral security for a loan upon $1,000, which testimony shows to have been on or about the 7th of September 1914. Deposition testimony further shows that the note by the bank was indorsed to Fred L. Stevens on March 5, 1915, who claims that the consideration he paid for the indorsement and delivery of the note was the taking up by him of the $1,000 loan made by the Iowa State Bank to Donald-Richards Company, Stevens now claims to be the owner of the note, and claims there is nothing paid upon the same.

The answer of the defendants is a general denial, and, in addition thereto, a further and separate defense, which is in substance as follows: That on or about the 18th day of September, 1914, at Enderlin, North Dakota, one Edwin Acker, the salesman and agent of the Donald-Richards Company, through fraud and misrepresentations, induced the defendants to execute an order for certain goods sold by the Donald-Richards Company; that in order to induce these defendants to make and execute said order for said goods, the agent, Acker, stated and represented to these defendants that said company sold goods to but one customer or firm in each city, and that the defendants would have the exclusive sale of said line of goods in the city of Enderlin; that said statements and representations were false, fraudulent, and untrue, and made for the sole and only purpose of inducing these defendants to sign said order; that the defendants believed in and relied upon said statements and representations, and by reason thereof, and not otherwise, and

without knowledge of the falsity thereof, executed said order and parted with the possession to said Donald-Richards Company, or its agent aforesaid; that such statements and representations were fraudulent and untrue, and were known to be false and untrue at the time they were made. As a further defense, the defendants denied execution of the note, and alleged that attached to, and forming a part of the order so given, and made by these defendants by reason of the false, fraudulent representations as aforesaid, was a certain printed form, in substance, as alleged in the complaint, and which plaintiff alleges to be a certain note in the sum of $94.50, due in instalments, but that said form was attached to and formed a part of said order so obtained, and was for the sole and only purpose of indicating the time within which said goods would be paid for, and was not delivered by the defendants, and was not received by Donald-Richards Company, and never became the note of the defendants; that at the time of delivery of said order and said alleged note, they constituted but one instrument, and the defendants allege that said note was never delivered and never became an obligation of the defendants, and that the defendants are not liable thereon.

The defendants further allege that since the execution of said order, as aforesaid, the defendants learned that the agent for Donald-Richards Company, did sell the same line of goods to others in the city of Enderlin, and that immediately upon learning this condition, they notified the said Donald-Richards Company; that they would not accept the goods, and did then and there offer to restore the goods to the Donald-Richards Company, in case it had parted with possession, and did then and there offer to rescind the contract, but alleges that Donald-Richards Company, was not then in position to restore to the defendants their said order and alleged note, and did then and there positively refuse to do so.

The defendants further alleged that they never received the goods, and allege that they have never been tendered to them at Enderlin, North Dakota, or any other place, and that they have received nothing for said alleged note.

The principal defense is that the contract and alleged note were procured by a fraud, they never attained any legal existence or standing, and thus never became a contract or promissory note. If this be true, there could be no delivery of the same.

Section 5849, Comp. Laws 1913, defines actual fraud; it reads thus: "Actual fraud within the meaning of this chapter consists in any of the following acts committed by a party to the contract, or with his connivance with intent to deceive another party thereto or to induce him to enter into the contract:

"(1) The suggestion as a fact of that which is not true by one who does not believe it to be true.

"(2) The positive assertion in a manner not warranted by the information of the person making it of that which is not true, though he believes it to be true.

"(3) The suppression of that which is true by one having knowledge or belief of the fact.

"(4) A promise made without any intention of performing it; or

"(5) Any other act fitted to deceive."

Mrs. Wrede, one of the defendants in the action, was sworn as a witness in the case. After she had been asked by her counsel several preliminary questions, the plaintiff objected to the introduction of the answers to any of them under the allegations of the answer, which tended to show fraud or misrepresentation, material alteration, lack of consideration, or any other defense alleged in the answer, upon the ground that the answer did not state facts sufficient to constitute a defense upon any of the grounds stated; and upon the further ground that it fails to allege that the plaintiff had any knowledge whatsoever of any defect in the title to the instrument in suit in the action, and fails to allege any notice of said defect was ever brought home to him as required by the negotiable instrument act in force in North Dakota; and upon the further ground that the burden is upon the maker of the note to first prove that the plaintiff is not indorsee in good faith, and that before he can prove any defense, he must first show that plaintiff was not the holder in due course, as due course is defined by the statute of North Dakota; and upon the further ground that there is no allegation and support of the defense of fraud in the inception of the instrument in dispute, and no allegation that any representation was made that the instrument in suit was not a note.

This motion the court denied. The stipulation above referred to was then made, which includes the testimony of Mrs. Wrede. She was a witness in the case, and was apparently testifying when the stipulation was made which set forth what she would testify to.

While this method of procuring testimony may not be entirely improper, it is a practice not to be encouraged where the witness is present in court and ready to testify. Assuming the testimony of Mrs. Wrede as contained in the stipulation as binding under the stipulation upon the parties, we will examine the evidence which it is stipulated she would give, and determine therefrom if it proves or tends to prove actual fraud. Her evidence in this regard is wholly undisputed and must be accepted as true. According to her testimony as stipulated, Acker, the agent of the plaintiff, stated to this witness and her partner that said instruments taken together constituted an order for goods, *and did not constitute a note,* but that the second proof of said instrument, now marked exhibit "A," which was attached to exhibit "B," was to represent merely the manner in which the goods or payment for the goods should mature.

If those statements and representations were made by Acker as the testimony of Mrs. Wrede as stipulated shows, such statements were under the statute false and fraudulent representations. Acker must have known that exhibit "A," which was attached to exhibit "B," was not merely to represent the manner or maturity of payment. He knew that exhibit "A" constituted a note; he knew that the instruments taken together did not constitute an order for goods only, but did constitute an order for goods plus a note. His representations were such, then, as to induce the defendants to believe that the instrument or instruments did not constitute a note, and that there was no note involved in the transaction; his conduct was such as was well fitted to deceive the defendants; his representations were of such character as to amount to the suggestion of a fact of that which is not true. He could not himself have believed it to be true. In other words, he must have had full knowledge of the intent and purpose of the whole contract, both exhibit "A" and "B;" and in view of the representations to which it is stipulated Mrs. Wrede would testify, he must have suppressed the true condition and intent and purpose of both exhibits "A" and "B."

It appears from the stipulation above set forth, that prior to the execution of the instrument in suit, the Donald-Richards Company, through one of its agents, had sold to J. I. Rue, a merchant in Enderlin, North Dakota, goods, wares, and merchandise of the same nature and composition as the articles sold defendants.

This evidence as stipulated supports the allegation of the answer

which, in substance, avers that Acker, the agent of the Donald-Richards Company, represented to the defendants that said company sold goods to but one customer or firm in each city, and that defendants would have the exclusive sale of said line of goods in the city of Enderlin; that said representations were false, fraudulent, and untrue, and relied upon by the defendants, and that they were induced thereby to execute the order for said goods, etc.

The copy of exhibits "A" and "B" is in evidence. The copy is in the original form. In other words, in the same condition it was before exhibit "A" was detached from exhibit "B."

When the instrument as a whole is considered in connection with all the circumstances of the case, the false and fraudulent representations pleaded, of which there is competent proof, it may well be considered an object of suspicion. Its arrangement is such as to facilitate the very fraud claimed by defendants. It is such an instrument as could easily be used to deceive the defendants and cause them to sign what was represented to them to be an order, when as a matter of fact the same was a note; part of the instrument when detached became a note. Certainly such an instrument is not one the use of which prevails to any great extent in commercial transactions, and as a whole and considered in connection with all the other evidence, facts, and circumstances, as well as the pleadings in the case, it is some evidence in support of the fraud, and the false and fraudulent representations claimed by the defendants.

Premises and representations such as made by Acker, the agent of the Donald-Richards Company, with the intent to deceive and without intention to fulfil, are fraud. Tamlyn v. Peterson, 15 N. D. 490, 107 N. W. 1081. A statement in the absence of positive knowledge, with intent to deceive, may be fraud. Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550. The stipulated evidence in the case at bar clearly shows that false and fraudulent representations were made prior to the time of the execution of the alleged contract and note. This being true, neither the alleged contract nor note ever attained a legal existence. They were, therefore, as a matter of law, neither executed nor delivered. As stated in the case of Knowlton v. Schultz, "The note having been obtained by fraud, the fraud tainted the whole instrument, and destroyed it entirely."

The plaintiff herein, however, seeks shelter under the protecting

mantle of the Negotiable Instrument Act. He has neither pleaded nor proved, nor offered any testimony, that he is a purchaser for value, before maturity, without notice, and in good faith. If he were such, it would have been a simple matter to have pleaded it, and equally as simple to have proved it.

The principle was clearly stated in the Tamlyn v. Peterson Case, above cited, that "when fraud in the inception of a negotiable instrument is alleged and proved, the burden is upon the indorsee to prove that he is a purchaser for value, before maturity, without notice and in good faith."

This principle was first laid down in case Vickery v. Burton, 6 N. D. 245, 69 N. W. 193, and again in the case of Knowlton v. Schultz, above cited. Fraud at the inception of the alleged contract and note having been established, the burden shifted to the indorsee, the plaintiff in this case, to prove by fair proponderance of the evidence that he was a good-faith purchaser for value, before maturity, without notice. If he could prove each of these elements, the proof was peculiarly within his power. He had an opportunity to plead and prove the same, and has done neither. It was incumbent upon him in this case to prove his good faith; he did not even testify that he had purchased it in good faith; as was said in the case of Knowlton v. Schultz. "It may be true in this case that the plaintiff bought before maturity, for value, and without notice of any defense; and yet, he may not be a purchaser in good faith. He may, when he bought, have had knowledge of facts which excited in his mind such suspicions as to the paper, that he feared to make an investigation lest it would disclose a defense, and therefore he carefully shut his eyes and bought in the dark. In such a case he would not be a purchaser in good faith."

This principle was again followed by this court in a very recent case. (Sweet v. Anderson, 41 N. D. 375, 170 N. W. 869), in that case in an opinion written by Mr. Justice Bronson, the following language was used: "A holder, in due course, of a promissory note, must establish his good faith as a matter of law, either by direct and uncontradicted testimony, or by circumstances which show consistently the good faith of his purchase so that no fair-minded person can draw any other inference therefrom."

It is further contended by the defendants and assigned by them as

error, that the order and purported note together constituted but one instrument, and that detaching the purported note is a material alteration of the instrument and rendered it void.

It would seem clear that the two instruments should be construed together. Exhibit "B" was that part of the whole instrument which contained the order for the goods. Exhibit "A" was, at the time of the procuring of the order in the manner before stated, attached to and formed a part of the whole contract. It showed the maturity of the payments; in other words, it was an instalment note attached to the sales contract, was subject to certain conditions or contingencies which appeared in the contract, prominently among which is a special agreement to buy back at the purchase price all the goods in the order remaining on hand at the termination of the agreement if the purchaser so desires, and, if net profits are less than 50 per cent each year for two years, will pay the difference in cash, provided purchaser has kept the goods tastefully displayed for sale in his store, using the advertising system as provided on the reverse side hereof, made payments as agreed, and used reasonable diligence in promoting the sale of goods. There also appeared a warranty as to quality, and the condition under which goods might be exchanged, and the agreement to furnish a bond to protect the purchaser in all the conditions of the sale.

The detaching of the note thereby making it a negotiable note, and giving to it a new and added value, is a material alteration of the contract, the legal result of which is to avoid the entire contract. It is contended, however, that the Donald-Richards Company, was authorized to detach the note by reason of the following words appearing in the contract, which are as follows, to wit: "That the company is authorized to detach the same when this order is approved and shipped." In the case of Stevens v. Venema, 202 Mich. 232, L.R.A.1918F, 1145, 168 N. W. 534, a Michigan case construing the identical words in practically an identical contract, the court used the following language: "This sentence appears in the order just above the perforation for detaching the note and below the signature in the order. Such expedient only emphasizes the sinister purpose of the combination."

In Toledo Scale Co. v. Gogo, 186 Mich. 442, 152 N. W. 1046, Ann. Cas. 1917E, 601, it appears from an original record that an unsuccessful attempt was made to validate the note for detachment by two provisions

in separate places,—one stating, you are authorized to date above-mentioned note at such time as you may elect to insert such date, either prior to or after the execution of such note; and the other, near the close of the instrument, that the signing or delivering of instalment note shall not be deemed or considered a payment or waiver of any term, provision, or condition of this contract. That opinion then further states: "We regard the decision in that case as well in point and controlling here." We are satisfied that the detaching of the alleged note from the contract was a material alteration of the contract, and the following abundantly sustained that conclusion: Ibid. Stevens v. Venema, above cited, as well as the following cases: Stevens v. Pearson, 138 Minn. 72, 163 N. W. 769; Bank of Evansville v. Kurth, 167 Wis. 43, 166 N. W. 658; Harrison v. Grier, 198 Mich. 672, 165 N. W. 854; Loveland v. Bump, 198 Mich. 564, 165 N. W. 855.

The plaintiff claims that fraud has not been shown, and that it is not shown that the note in question was executed and delivered at the time of the false and fraudulent representations. In this claim, there is no merit. So far as the testimony is concerned, there is no showing that Edwin Acker, the agent of the Donald-Richards Company, ever had any negotiations with the defendant except the time when the contract and note were procured. The only inference from the testimony that can be drawn is that the contract and note in question were signed at about the time and after the false and fraudulent representations were made. If they were made at any other time, the burden was upon the plaintiff to so show, and he has not done so.

The question of the delivery of the goods or articles to the defendants is not, by any means, in this case, a controlling one; it is not really an issue in the case. It is only material, if at all, to show the good faith of the indorsee. He has wholly failed to show by a preponderance of evidence his good faith.

The principal questions in this case are:

(1) Was the contract and note procured by false and fraudulent representations? We think it was, and, being so procured, there was no legal execution or delivery of them.

(2) Was the indorsee a purchaser in good faith, for value, without notice? We think he was not; at least the proof does not so show; he has failed to prove it by a preponderance of the evidence.

(3) Was the contract altered? The evidence is ample and sufficient to show that the alleged contract and note were procured by false and fraudulent representations, and thereafter were materially altered, and for that reason are of no legal effect.

The judgment appealed from is reversed. The plaintiff's action should be dismissed and the District Court should enter an order to that effect. The case is remanded to the District Court for further proceedings not inconsistent with this opinion.

The defendants are entitled to statutory costs on appeal.

ROBINSON and BRONSON, JJ., concur.

BIRDZELL, J. (dissenting). The deposition of G. S. Krouth, of Iowa City, shows that he is cashier of the Iowa City State Bank, that on behalf the bank he took the note in question before maturity as collateral security for a loan made to the Donald-Richard Company, and that at the time he took it he had no knowledge whatever of the transaction between the Donald-Richards Company and the defendants, and no knowledge of any defenses. Stevens, the plaintiff, who also testified by deposition, stated that he took up the loan of the Donald-Richard Company at the bank, paying the full cash consideration; also that he obtained the note in suit as collateral and became the owner of both notes. M. H. Taylor, the assistant manager of the Donald-Richard Company, in his deposition testified that the goods for which the note was given were shipped to the defendants, and that the defendants have never returned them or any portion thereof, nor offered to do so. No evidence was offered on the part of the defendants to dispute the testimony of Taylor with reference to the goods; nor was there any testimony given or offered with reference to any damages incident to any alleged fraudulent representations; nor did the defendants attempt to make any showing that a rescission had either been made or attempted. In this state of the record it seems to us that no defense was made out which would defeat the right of the plaintiff, if he be considered merely the assignee of the purchase-price obligation signed by the defendants; and that it is immaterial whether the instrument in suit be regarded as negotiable or not.

The testimony for the plaintiff is nearly all in the shape of deposi-

tions, which accounts for the fact that it embraces questions and answers going to establish good faith out of the regular order of proof. The evidence for the defendant, with the exception of five preliminary questions and answers in connection with the examination of the witness, Mrs. Wrede, consists of a stipulation as to what Mrs. Wrede would testify to. Accepting as facts all that it is stipulated she would testify to, there would, in our opinion, be lacking proof of facts sufficient to constitute a defense as hereinbefore indicated.

CHRISTIANSON, Ch. J., concurs.